CITY OF WORCESTER *vs.* ANTHONY BONAVENTURA & others.[1]

No. 00-P-1208.

Worcester. March 22, 2002. - September 30, 2002.

Present: DUFFLY, KASS, & TRAINOR, JJ.

*Condominiums. Lodging House. Zoning,* Lodging house, Validity of by-law or ordinance. *Municipal Corporations,* By-laws and ordinances. *Due Process of Law,* Vagueness of ordinance.

A city's zoning ordinance defining a lodging house was not unconstitutionally vague, where, interpreted in the context of the ordinance as a whole, a lodging house was clearly defined as a dwelling unit rented to four or more persons not constituting a family, and the definition of "family" in the ordinance did not trespass on constitutional inhibitions. [168-169]

CIVIL ACTIONS commenced in the Worcester Division of the Housing Court Department, three on November 29, 1999, two on December 7, 1999, and one on December 10, 1999, respectively.

The cases were heard by *John G. Martin,* J.

*Donald V. Rider, Jr.,* Assistant City Solicitor, for the plaintiff.

DUFFLY, J. The plaintiff, city of Worcester (city), filed six complaints in Housing Court seeking permanent injunctive relief against the defendants, six condominium owners.[2] The city sought to enforce its orders directing the defendants to cease

---

[1]Ketan Manjrekar (two cases); Jaret Christopher; Peter and Georgia Christopher; and John and Anne Gamache.

[2]The record does not include a copy of the complaints nor copies of legal memoranda or of the stipulations of fact submitted by the parties to the trial judge, who was also the motion judge in connection with the city's request for preliminary injunctive relief. "The fact that parts of the record are not included in the appendix shall not prevent the . . . court from relying on such parts . . . ." Mass.R.A.P. 18(a), as amended, 378 Mass. 940 (1979). The defendants did not submit a brief or appear at oral argument, and thus have not claimed "that the plaintiff has misrepresented the content [of its complaints]." *Quinn* v. *Quinn,* 49 Mass. App. Ct. 144, 145 n.2 (2000).

and desist from operating their respective condominium units as lodging houses, and to obtain applicable approval and permits as a precondition to operating the lodging houses — orders that the defendants disobeyed. The city appeals the judgments against it and challenges the trial judge's finding that the "lodging house" ordinance was unconstitutionally vague.[3]

The facts, stipulated by the parties and found by the judge, are not disputed. The defendants each own one or more condominium units in a complex known as the Autumn Chase Condominium located at 920 Southbridge Street, Worcester. The condominium complex is located in a residential-zoned district within the city. Each unit contains two or three bedrooms and is occupied by four unrelated individuals, all of whom are students at the College of the Holy Cross, which is nearby. Each individual is a signatory on the lease for the unit he or she occupies; is jointly and severally liable for the rent; is responsible for his or her own heat and utilities; and "each possess a key to their (sic) respective units and have full use of the entire unit."

Based on these facts, the judge distinguished between tenants and lodgers, noting that "a tenant has the right to exclusive possession of the premises," whereas "[a] lodger has merely the right to use the premises." He declared the ordinance to be unconstitutionally vague, and concluded that "the living arrangements of the [d]efendants' group[s] of tenants, in their

---

[3]The city protests that this was a ground not raised by the defendants or argued by the city. "We recognize that there will be instances where a judge may glimpse an issue not perceived by the parties. On those occasions, the course that the judge should follow is to notify counsel of his concerns and permit counsel to present evidence on the question which the judge perceives to be dispositive." *Messina* v. *Scheft*, 20 Mass. App. Ct. 945, 946 (1985). Even if the issue is not dependent upon additional evidence, counsel should ordinarily be given the opportunity of submitting memoranda addressing the legal issue. "Serious problems may be created whenever a judge bases a decision on an issue that is not before the court." *Ibid.* See *Harrington-McGill* v. *Old Mother Hubbard Dog Food Co.*, 22 Mass. App. Ct. 966, 968 (1986). This is particularly so where "a question of constitutionality [of a municipal ordinance] is involved." G. L. c. 231A, § 8, inserted by St. 1945, c. 582, § 1. In such a case, the Attorney General must be notified of the proceeding. See *Gamache* v. *Acushnet*, 14 Mass. App. Ct. 215, 223 (1982). Because we conclude that the ground on which the judge relied was incorrect, we do not address the city's claim that he was not at liberty to consider it.

respective dwelling units, approximate the living arrangements of traditional families," and formed "single housekeeping unit[s] which [are] entitled to the same treatment" as families under the city's ordinances.

Although there exists a historic distinction between a "lodger" and "tenant," see *White* v. *Maynard*, 111 Mass. 250, 253 (1872) (lodger has no possessory right to property he is allowed to occupy), changes to Massachusetts law have permitted a lodger to obtain a possessory interest as a tenant at will provided he resides in the same place for three consecutive months, see G. L. c. 186, § 17. Whether the defendants were operating lodging houses should not turn on the status of the student occupants as tenants.

The ordinance was not unconstitutionally vague. Even were we to conclude that the definition of what constitutes a lodger or lodging house was not precise, local zoning provisions are "entitled to a strong presumption of constitutional validity . . . , and courts should be wary of declaring zoning fatally indefinite." *Commonwealth* v. *Jaffe*, 398 Mass. 50, 54 (1986) (citations omitted). An ordinance must be enforced absent "a showing beyond [a] reasonable doubt of conflict with the Constitution or the enabling statute." *Rosko* v. *Marlborough*, 355 Mass. 51, 53 (1968).

Zoning ordinance terms "should be interpreted in the context of the [ordinance] as a whole and, to the extent consistent with common sense and practicality, they should be given their ordinary meaning." *Hall* v. *Zoning Board of Appeals of Edgartown*, 28 Mass. App. Ct. 249, 254 (1990). The city ordinance defines lodging house as follows:

> "A dwelling or that part of a dwelling where sleeping accommodations are let, with or without kitchen facilities, to four (4) or more persons not within the second degree of kindred to the person conducting it, and shall include rooming houses, boarding houses and tourist homes, but shall not include hotels, motels, inns, sorority, fraternity and cooperative residences, dormitories, or convalescent

homes, nursing homes, rest homes, or group residences licensed or regulated by agencies of the Commonwealth."[4]

The ordinance further defines various forms of "dwelling" (e.g., single or multi-family) as places for human habitation providing independent living facilities for one or more persons, and "family" as one or more persons occupying a dwelling unit "and living together as a single housekeeping unit, not including a group of more than three (3) persons who are not within the second degree of kinship." Taken together, a lodging house is clearly defined as a dwelling unit that is rented to four or more persons not constituting a family.

Nothing on the record suggests that the ordinance is open to a varied application. See *Custody of a Minor (No.2)*, 378 Mass. 712, 717 (1979) (if language "definitively describes conduct that is proscribed, it is constitutionally adequate"). The definition of "family" in the city's ordinance does not trespass on constitutional inhibitions. In *Village of Belle Terre* v. *Boraas*, 416 U.S. 1, 7 (1974), the Court upheld the constitutionality of an ordinance that limited the definition of "family" to no more than two unrelated individuals. The Court held that the police power of a municipality, as exercised in a zoning code, is not limited to curing urban blight, but can extend to protecting other values important to the community, in this case preserving the quiet character of neighborhoods, and that limiting the number of unrelated people living together was rationally related to this legislative purpose. *Id.* at 9.

We vacate the judgment and remand to the Housing Court for further proceedings.

*So ordered.*

---

[4]The city's ordinance resembles the definition of "lodging house" provided by G. L. c. 140, § 22. Chapter 140, generally, establishes licensing authorities and defines the scope of their authority.